**F.O.P. ROSE OF SHARON LODGE NO. 3, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 12, 1999.

Decided May 18, 1999.

Gary M. Lightman, Harrisburg, for petitioner.

Peter Lassi, Harrisburg, for respondent.

Before McGINLEY, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Fraternal Order of Police, Rose of Sharon Lodge No. 3(FOP) petitions for review of the June 6, 1998 Final Order of the Pennsylvania Labor Relations Board (Board) that dismissed a charge of unfair labor practice against the City of Sharon (City) after determining that the City's unilateral reduction of a service requirement for promotion eligibility did not affect a mandatory subject of collective bargaining. The FOP contends that the Board erred by holding that a reduction in seniority requirements for a bargaining unit promotional opportunity in a Third Class City police department was not a mandatory subject of bargaining under the Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10, more commonly known as Act 111. For the reasons that follow, we affirm.

In its Final Order, the Board found the following essential facts. The FOP is the collective bargaining representative for the City's police officers. The collective bargaining agreements (CBAs) between the parties for the years 1980 through 1983 did not address the minimum service requirements for promotional eligibility.

The parties' CBA for the 1984–85 year provided that an applicant for promotion have at least five years of experience with a law enforcement agency and at least three years of experience with the City. A 1986 arbitration award amended the par-

ties' CBA to require a minimum of six years of service with the City for eligibility for promotion. However, language concerning the issue of the minimum service requirement for promotional eligibility was not retained in either the CBA for the 1987–88 year or in any of the subsequent CBAs between the parties, including the CBA which was in effect in 1997.

In 1990, the City unilaterally implemented the requirement that applicants for promotion have five years of service as a police officer. That policy remained in effect until January 1997 when the City posted vacancies in the positions of detective and juvenile officer. The postings stated that any police officer in his fifth year of service could apply for these positions. This change in the minimum service requirement was not bargained for with the FOP and had the effect of increasing the pool of applicants.

On February 20, 1997, the FOP filed with the Board a charge of unfair labor practices alleging that the City had engaged in unfair labor practices by unilaterally changing the minimum service requirements for promotion in violation of Sections 6.1(a) and (e) of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. § 211.6(a) (interfering, restraining or coercing employees in the exercise of their rights guaranteed under this Act) and (e) (refusing to bargain collectively with employees).

A hearing was held before a duly designated Hearing Examiner at which all parties in interest were afforded an opportunity to present testimony, cross-examine witnesses and introduce documentary evidence. On January 21, 1998, the Hearing Examiner entered a Proposed Decision and Order (PDO) concluding that the City had committed unfair labor practices under Sections 6.1(a) and (e) of the PLRA and Act 111 by unilaterally reducing the minimum service requirement for eligibility for promotion. Specifically, the Hear-

ing Examiner, relying on previous Board decisions, ruled that changes in promotional procedures are mandatory subjects of bargaining

On February 10, 1998, the City filed timely exceptions to the PDO contending, *inter alia,* that it did not change the promotional procedure but rather changed the substantive requirements for the detective and juvenile officer positions. The City argued that such an action is within its managerial prerogative and need not be bargained.

The Board agreed with the City and on June 6, 1998, entered a Final Order sustaining the City's exceptions in part. The Board, citing several Board decisions reasoning that an employer need not bargain over establishment of job qualifications because such action relates more directly to the employer's managerial interest in selection and direction of personnel than to the employees' interests in wages, hours and working conditions, stated:

> We similarly find that the matter at issue here is more rationally related to the City's managerial prerogative to establish the qualifications for positions than to employe terms and conditions of employment and accordingly is not a mandatory subject of bargaining. Indeed, to require the City to bargain over a reduction in the minimum service requirement for appointment to particular positions would effectively require negotiation over job qualifications, a matter which the Board has held need not be bargained. Therefore, we will vacate the hearing examiner's conclusion that the City violated its duty to bargain.

Board's Final Order, p. 2 (footnote omitted).

Hence, the Board, in its Final Order, vacated the Hearing Examiner's determination and dismissed the charge that the City had committed unfair labor practices in violation of Section 6.1(a) and (e) of the PLRA and Act 111. The FOP appeals.[1]

1. This Court's scope of review is limited to determining whether there was a violation of constitutional rights, whether there was an error of law or whether the PLRB's necessary

Before the Court the FOP contends that the Board erred in dismissing the charge of unfair labor practices and in holding that the City's unilateral change in seniority qualification for promotion within a Third Class City police department was not a mandatory subject of bargaining under Act 111 and the PLRA. The FOP maintains that the issue of seniority requirements for promotion is a proper subject of mandatory bargaining pursuant to the terms of Act 111.

Section 1 of Act 111, 43 P.S. § 217.1, provides:

Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, *have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits,* and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act. (Emphasis added).

The FOP asserts that based on the above provision, there are two classes of subjects for mandatory bargaining: those expressly bargainable such as compensation, hours, working conditions, pensions, retirement and other benefits; and those generic and undefined "terms and conditions of employment."

"Pursuant to the PLRA, an employer commits an unfair labor practice if the employer refuses to bargain collectively with the representatives of its employees. Act 111, which must be construed in *pari materia* with the PLRA, sets forth those subjects over which policemen have the right to bargain collectively." *Plumstead Township v. Pennsylvania Labor Rela-*

*tions Board,* 713 A.2d 730, 733 (Pa. Cmwlth.1998) (citations omitted). In order to determine whether something is or is not a mandatory subject of bargaining, the Court in *Plumstead Township* reasoned:

Although Act 111 does not expressly provide for the reservation of management rights, we recognize that Act 111 does not remove all police regulation from the scope of a municipality's managerial decision-making process; any regulation which might be considered essential for the proper and efficient functioning of a police force may remain subject to municipal management. For an issue to be deemed a managerial prerogative and, thus, not a mandatory subject of bargaining, a managerial policy concern must *substantially outweigh* any impact an issue will have on the employees. Whether a given subject is a managerial prerogative should be determined in the first instance by the [Board].

*Id.* at 735 (citations omitted, emphasis in original).

The FOP maintains that in applying the rationale in *Plumstead Township* to the facts in the case at bar, it is evident that a rational relationship exists between the officers' duties and the use of seniority in the promotional process and that it substantially outweighs the only managerial interest of record, i.e., a sufficient number of quality officers available for promotion. We disagree.

 Initially, we note that in *City of Erie v. Haas Memorial Lodge No. 7,* 61 Pa.Cmwlth. 587, 434 A.2d 881 (1981), the Court had previously decided the issue now raised by the FOP in the case at bar, i.e., whether qualifications for promotion in Third Class City police departments is a mandatory subject of collective bargaining under Act 111. In *City of Erie,* the Court reasoned:

findings of fact are supported by substantial evidence. *Frackville Borough Police Department v. Pennsylvania Labor Relations Board,*

701 A.2d 632 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 551 Pa. 706, 712 A.2d 287 (1998).

Third Class City Code Section 2002, 53 P.S. § 37002, clearly and explicitly places *no* limitation on the Mayor's appointing and promoting authority by mandating that "[t]he mayor *shall* designate, from the force, the chief and other officers who shall serve as such officers...." (emphasis added). The provision is restrictive in itself, requiring the Mayor to choose his chief and other officers from the force. We will not judicially sanction any proposed restriction, whether arbitrated or otherwise, on the positive requirements set out by our legislature in the Third Class City Code.

Our legislature unmistakably entrusted to its third class city mayors the power to designate their chiefs of police and other officers of the police department without interference or limitation. This dictate of control to the Mayor over promotions connotes a positive statutory requirement, must be classified as mandatory, and is patently inapposite to an arbitration award which mandates that promotions can only be made on the basis of an undefined merit selection system.

434 A.2d at 882–883 (footnote omitted). In addition, the Court in *City of Erie* stressed in a footnote to the above discussion that "arbitrators are prohibited from making awards which are excluded from the scope of Act 111 and outside the definition of bargainable issues." 434 A.2d at 883 n. 4. In light of this Court's decision in *City of Erie,* we believe that requirements for promotional opportunities for policemen in Third Class cities are not included within the scope of what is subject to mandatory bargaining under Act 111.

Moreover, in *Delaware County Lodge No. 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board,* 722 A.2d 1118 (Pa.Cmwlth.1998), this Court, in applying the same rational relationship test used in *Plumstead Township* to determine what are managerial prerogatives, stated:

In construing this language [Section 1 of Act 111], our courts have concluded that an issue is presumptively bargainable if it bears a rational relationship to an employee's duties. *Township of Upper Saucon v. Pennsylvania Labor Relations Bd.,* [152 Pa.Cmwlth. 530, 620 A.2d 71, 73 (1993) ]. However, where a managerial policy concern substantially outweighs any impact the issue will have on employees, the issue will be deemed a managerial prerogative, rendering the issue nonbargainable. *Id.* at 74; *Frackville Borough Police Dep't v. Pennsylvania Labor Relations Bd.,* 701 A.2d 632, 634 (Pa.Cmwlth.1997) (A subject may be a managerial prerogative which need not be bargained, even though it may affect employee wages, hours or working conditions.); *City of Sharon v. Rose of Sharon Lodge No. 3,* [11 Pa.Cmwlth. 277, 315 A.2d 355, 358 (1973) ] (Act 111 does not remove all regulation of policemen from the scope of a municipality's managerial decision-making, particularly any regulation which might be considered "essential for the proper and efficient functioning of a police force.")

. . . .

It is within a Township's prerogative to establish and utilize a method to aid in selecting and directing its personnel and in measuring and evaluating their performance. The ability to formulate policies in these areas is essential for the proper and efficient functioning of a police force. *See City of Sharon.* Further, it is well established that the Board possesses administrative expertise in the area of public employee labor relations and that great deference should be given to the Board's assessment of the often competing concerns between the employer and the union.

*Id.* at 1121 (footnote omitted).

In the case *sub judice,* the Board reversed the Hearing Examiner and determined that the City need not bargain over a change in the minimum qualifications for promotion because such action relates more directly to the public employer's managerial interest in selection and direction of personnel than to an employee's terms and conditions of employment and accordingly is not a mandatory subject of

bargaining. The Board correctly noted: "Indeed, to require the City to bargain over a reduction in the minimum service requirement for appointment to particular positions would effectively require negotiation over job qualifications, a matter which the Board has held need not be bargained." Board's Final Order, p. 2.

██ We agree with the Board that a change in the minimum requirements for promotion relates directly to the City's managerial prerogative in selection and direction of personnel and is not subject to mandatory bargaining under Act 111. The determination that in view of their increasing educational backgrounds, police officers with only four years of experience would be able to meet the increased responsibilities of the detective and juvenile

officer positions is clearly one to be made by the City as employer.

Furthermore, The Board's Final Order is entirely consistent with this Court's decisions in *City of Erie v. Haas Memorial Lodge No. 7* and *Delaware County Lodge No. 27, Fraternal Order of Police.*[2] Accordingly, we affirm.

### ORDER

AND NOW, this 18th day of May, 1999, the June 6, 1998 Final Order of the Pennsylvania Labor Relations Board is hereby affirmed.

---

**2.** We reject the FOP's contention that the employees' interest in seniority substantially outweighs the City's interest in formulating qualifications for promotion. The FOP's position is clearly contrary to the rationale of the Court in *Delaware County Lodge No. 27,* i.e.,

that it is the prerogative of the municipality to formulate policies in the selection and direction of its personnel.